UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKOLA LOVIG,<br><br>    Plaintiff,<br><br>    v.<br><br>BEST BUY STORES LP, et al.,<br><br>    Defendants. | Case No. 18-cv-02807-PJH<br><br>**ORDER COMPELLING ARBITRATION AND STAYING CASE**<br><br>Re: Dkt. No. 15 |

## BACKGROUND

Plaintiff Nikola Lovig was an employee of defendant Best Buy Stores, L.P. ("Best Buy Stores") from approximately April 24, 2004 until May 12, 2017. First Amended Complaint ("FAC"), Dkt. 14 ¶ 21; Dkt. 16 ("Sipprell Decl.") ¶ 3. On April 3, 2018, plaintiff brought an action against Best Buy Stores and Best Buy Co., Inc. (together "Best Buy") as a putative class action on behalf of "[a]ll persons employed by Defendants and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California during the Relevant Time Period." Dkt. 1-1 (Compl.) ¶ 12. The state court complaint alleged the following causes of action: (1) failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay hourly wages, (4) failure to provide accurate written wage statements, (5) failure to timely pay all final wages, and (6) unfair compensation. See Compl. On July 10, 2018, plaintiff filed a FAC, adding a seventh cause of action under the Private Attorneys General Act, Cal. Lab. Code §§ 2698, et seq. ("PAGA"). See FAC.

Effective March 15, 2016, while plaintiff was employed by Best Buy Stores,

defendants implemented an arbitration policy. Sipprell Decl. ¶ 4 & Ex. A at 1[1] (the "Arbitration Policy" or "Arbitration Agreement"). Agreeing to the terms of the Arbitration Policy was a "mandatory condition of initial and continuing employment at Best Buy" for plaintiff. Sipprell Decl., Ex. A at 1. The Arbitration Policy provided that "by . . . remaining employed . . . employees agree to this Policy's terms." Id. Best Buy Stores provided plaintiff and all employees with access to a document entitled "Arbitration Policy Frequently Asked Questions (FAQs)," which provides that, "[a]s with any other Best Buy policy, by remaining employed, employees are considered to have agreed to the policy." Sipprell Decl. ¶ 6 & Ex. B at 1. Prior to implementation of the Arbitration Policy, Best Buy Stores posted the policy to an intranet site that contains Best Buy Stores' human resources policies. Sipprell Decl. ¶ 5.

Over five months later, on August 28, 2016, plaintiff's manager gave plaintiff a list of online training modules for plaintiff to complete, including an information module about the Arbitration Policy. Dkt. 22-1 ("Lovig Decl.") ¶ 5. Plaintiff completed all of the training modules except the one covering arbitration. Id. ¶ 6. Plaintiff at that time told his manager, Richard Arganda, that he didn't agree with arbitration agreements and wouldn't sign one with Best Buy. Id. Arganda then went to confer with another manager, Michelle Garcia, who plaintiff believed to be a more senior manager. Id. Plaintiff alleges that Arganda then told plaintiff that "there are no issues with my [plaintiff's] refusal to complete the training covering the arbitration agreement." Id.

In a retaliation complaint plaintiff filed with the California Labor Commissioner's Office, Retaliation Complaint Investigation Unit, at some point during or before September 2016, plaintiff alleged that, "[b]y implementing the 'Arbitration Policy' they are able to force me to quit the company or waive my right to sue" and "[b]y making other employees agree to the 'Arbitration Policy' or be fired, they position themselves to impede/prevent me from starting a class action lawsuit against them[.]" Sipprell Decl. ¶ 9

---

[1] Citations to the Arbitration Policy refer to page numbers 1–6, indicated in the upper-right corner of the document.

& Ex. D.

On or about February 22, 2017, plaintiff was approached by another manager, Dragos Damien, who instructed plaintiff to complete several online training modules, pointing out specifically the training module covering the arbitration policy. Lovig Decl. ¶ 7. Plaintiff once again completed all of the training programs except the one covering arbitration. Id. Later that day, Damien asked plaintiff whether he completed the arbitration training program. Id. ¶ 8. Plaintiff informed Damien that he discussed this issue with other managers and that he would not complete the arbitration training module as he was not willing and had no desire to sign an arbitration agreement. Id.

Through the date of his termination on May 12, 2017, plaintiff had not signed any arbitration agreement with defendants.[2] Id. ¶¶ 2, 10; FAC ¶ 21. Plaintiff claims that he was never made aware that by remaining employed with defendants, he was agreeing to an arbitration agreement. Id. ¶ 11.

On April 3, 2018, plaintiff filed a complaint in Alameda County Superior Court. On May 3, 2018, defendants provided plaintiff's counsel with materials regarding the Arbitration Policy and requested that plaintiff stipulate to arbitrate his claims on an individual basis and dismiss the complaint. Dkt. 15-1 ¶ 2 & Ex. 1. Plaintiff's counsel did not respond.

On May 11, 2018, defendants removed the case to this court. Dkt. 1. On July 10, 2018, plaintiff filed the FAC, adding the PAGA cause of action. See FAC.

**DISCUSSION**

Defendants move this court for an order compelling plaintiff to arbitrate certain of his claims, dismissing plaintiff's class claims, and staying plaintiff's PAGA claim pending arbitration. The court addresses each request in turn.

**A.     Whether Plaintiff Must Arbitrate His Claims**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., any party bound

---

[2] Neither plaintiff's nor defendants' counsel was aware whether plaintiff was fired or quit, and the complaint is also silent on the issue.

3

to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 2–4; see also Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001) (addressing the FAA's applicability to employment contracts). The FAA requires the court to compel arbitration of issues covered by the arbitration agreement. Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 217 (1985).

In ruling on a motion to compel arbitration under the FAA, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000); Lifescan., 363 F.3d at 1012. If the answers are yes, the court must enforce the agreement. Id.

Regarding whether an agreement exists to arbitrate, the "first principle" that underlies the U.S. Supreme Court's arbitration decisions is that "[a]rbitration is strictly a matter of consent" and thus "is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." Granite Rock Co. v. Int'l B'hd of Teamsters, 561 U.S. 287, 299 (2010) (internal quotation marks and citations omitted); see also First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." Granite Rock, 561 U.S. at 297.

Regarding the validity of the agreement, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, state contract defenses may be applied to invalidate arbitration clauses if those defenses apply to contracts generally. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (state law defense, such as unconscionability, that applies to contracts generally may also invalidate an arbitration agreement). "The party seeking arbitration bears the burden of proving the existence of

4

an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012).

Regarding the scope of the agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). Nevertheless, a motion to compel arbitration should be denied if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986).

### 1. Whether the Parties Entered into An Arbitration Agreement

The parties dispute whether they entered into an arbitration agreement. Plaintiff argues that he never read or assented to the agreement's terms, so he never accepted or entered into the agreement. Defendants argue that plaintiff did in fact know the agreement's terms, and he accepted the Arbitration Policy in the manner specified in the policy—by continuing to work.

"While the FAA requires a writing, it does not require that the writing be signed by the parties." Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1439 (9th Cir. 1994) (internal quotation marks omitted). The court applies "ordinary state-law principles that govern the formation of contracts to decide whether an agreement to arbitrate exists." Norcia v. Samsung Telecommunications Am., LLC, 845 F.3d 1279, 1283–84 (9th Cir. 2017) (internal quotation marks omitted). Here, the parties agree that California law governs the issue of contract formation. "In discerning California law, we are bound by the decisions of the California Supreme Court, 'including reasoned dicta.'" Id. at 1284 (quoting Muniz v. United Parcel Serv., Inc., 738 F.3d 214, 219 (9th Cir. 2013)). "We generally will 'follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it.'" Id. (quoting Muniz, 738 F.3d at 219).

A contract to arbitrate will not be inferred absent a "clear agreement." Davis v.

5

Nordstrom, Inc., 755 F.3d 1089, 1092 (9th Cir. 2014) (quoting Avery v. Integrated Healthcare Holdings, Inc., 218 Cal. App. 4th 50, 59 (2013)). A "clear agreement" to arbitrate may be either express or implied in fact. Davis, 755 F.3d at 1093.

In California, "mutual consent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding." Reigelsperger v. Siller, 40 Cal. 4th 574, 579–80 (2007) (quoting 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 116, p. 155). "[T]he terms of a contract ordinarily are to be determined by an external, not an internal, standard; the outward manifestation or expression of assent is the controlling factor." Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 992 (1972). "Although mutual consent is a question of fact, whether a certain or undisputed state of facts establishes a contract is a question of law for the court." Deleon v. Verizon Wireless, LLC, 207 Cal. App. 4th 800, 813 (2012).

As a general rule, "silence or inaction does not constitute acceptance of an offer. . . . There are exceptions to this rule, however. . . . An offeree's silence may . . . be treated as consent to a contract when the party retains the benefit offered." Norcia, 845 F.3d at 1284 (quoting Golden Eagle Ins. Co. v. Foremost Ins. Co., 20 Cal. App. 4th 1372, 1385 (1993)). "Even if there is an applicable exception to the general rule that silence does not constitute acceptance, courts have rejected the argument that an offeree's silence constitutes consent to a contract when the offeree reasonably did not know that an offer had been made." Norcia, 845 F.3d at 1285. "[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." Windsor Mills, 25 Cal. App. 3d at 993.

However, when an offer is accepted, "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them. 'A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.'" Norcia, 845 F.3d at 1284 (quoting Marin Storage & Trucking, Inc. v. Benco Contracting &

Eng'g, Inc., 89 Cal. App. 4th 1042, 1049 (2001)); accord Pinnacle Museum, 55 Cal. 4th at 236 ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause."); Windsor Mills, 25 Cal. App. 3d at 992 ("an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains").

In the employment context, "acceptance of an agreement to arbitrate may be express . . . or implied-in-fact where . . . the employee's continued employment constitutes her acceptance of an agreement proposed by her employer." Craig v. Brown & Root, Inc., 84 Cal. App. 4th 416, 420 (internal citations omitted); see also Bayer v. Neiman Marcus Holdings, Inc., 582 Fed. App'x. 711, 713 (9th Cir. 2014). "Where an employee continues in his or her employment after being given notice of the changed terms or conditions, he or she has accepted those new terms or conditions." Davis, 755 F.3d at 1093 (applying California law); see also Asmus v. Pac. Bell, 23 Cal. 4th 1, 15 (2000) ("Plaintiffs' continued employment constituted acceptance of the offer of the modified unilateral contract."). An employer need not inform an employee "that her continued employment after receiving the letter [containing a new policy] constituted acceptance of new terms of employment." Davis, 755 F.3d at 1094 (California does not "require that employees must be expressly told that continued employment constitutes acceptance").

Regarding employer changes to arbitration policies, courts have found that providing employees with reasonable notice of the policy, and an employee continuing to work after such notice, is sufficient to form an arbitration agreement. See Davis, 755 F.3d at 1094 ("Nordstrom satisfied the minimal requirements under California law for providing employees with reasonable notice of a change to its employee handbook by sending a letter to Davis and other employees informing them of the modification, and not seeking to enforce the arbitration provision during the 30 day notice period."); Craig, 84 Cal. App. 4th at 420–22 (employer provided copies of its arbitration policy to the plaintiff employee, who never signed an acknowledgment nor otherwise expressly agreed to be

7

bound by the policy, yet because the arbitration policy was "received by Craig in 1993 and again in 1994[, and] she continued to work for Brown & Root until 1997 . . . she thereby agreed to be bound by the terms"); Aquino v. Toyota Motor Sales USA, Inc., Case No. 15-cv-05281-JST, 2016 WL 3055897, at *4 (N.D. Cal. May 31, 2016) ("an implied-in-fact agreement exists between Toyota and Ms. Aquino to arbitrate the claims at issue" because, "[a]s in Craig, Ms. Aquino had notice of Toyota's implementation of the arbitration agreement, and she continued to work for Toyota after the Agreement went into effect" despite the fact that "she did not sign the Agreement because she did not agree to it").

In Craig, the employee (named Craig) filed a sworn declaration that she "did not receive any of these documents [containing the arbitration provision] at my residence in Baldwin Park during the years 1993 or 1994." Craig, 84 Cal. App. 4th at 420. The court considered competing "declarations and documents showing that the items were mailed to Craig at her home address and not returned[.]" Id. at 421. Weighing the evidence, the court determined that Craig did in fact receive the documents mailed to her. The appellate court affirmed the finding of a valid arbitration agreement, finding that "there is substantial evidence (1) that the memorandum and brochure [containing the arbitration provision] were received by Craig in 1993 and again in 1994; (2) that she continued to work for Brown & Root until 1997; and (3) that she thereby agreed to be bound by the terms of the Dispute Resolution Program, including its provision for binding arbitration." Id. at 422.

In Aquino, 2016 WL 3055897, at *4, the employer Toyota sent communications containing the arbitration policy by email and mail such that "Aquino had notice of Toyota's implementation of the arbitration agreement, and she continued to work for Toyota after the Agreement went into effect." Id. Aquino argued that "she thought that she would have to sign the Agreement to make it effective, and that she did not sign the Agreement because she did not agree to it." Id. She also argued that she never expressed "intentional communication of assent." Id. But neither did she "ever attempted

8

to communicate her lack of consent to the Agreement to Toyota in any way." Id. The court stated that "mutual consent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding." Id. It was "undisputed that Ms. Aquino received the Agreement (at least via email), that she failed to opt out of it, . . . that she continued to work at Toyota after the Agreement went into effect," and that she never "attempted to communicate her lack of consent to the Agreement to Toyota in any way." Id. The court found that "[u]nder California law, these facts establish an enforceable agreement between Ms. Aquino and Toyota." Id.

Here, the parties do not dispute that Best Buy gave Lovig notice that it was instituting a new arbitration policy. Prior to its implementation on March 15, 2016, Best Buy posted the Arbitration Policy to an intranet site that contains Best Buy Stores' human resources policies, and it posted documentation and a training module explaining the Arbitration Policy to the same site. Sipprell Decl. ¶¶ 5–6. Plaintiff had access to those training materials, and he in fact knew that training about the Arbitration Policy was available to him as early as January 2016. Lovig Decl. ¶ 3. Although he knew how to access and review those materials beginning in January 2016, plaintiff elected not to review them. Id. ¶¶ 3–4. It is also clear that by September 2016, plaintiff actually did know some of the specific terms of the Arbitration Policy, including that it would "force me [Lovig] to quit the company or waive my [Lovig's] right to sue[.]" Sipprell Decl., Ex. D at 2.

These actions, and the availability of the Arbitration Policy on the intranet, were clearly sufficient to provide Lovig with notice of the new policy. E.g., Craig, 84 Cal. App. 4th at 420; Aquino, 2016 WL 3055897, at *4. Lovig was presented with the Arbitration Policy and was given ample notice about it and its terms. The policy specifically stated that continued employment constituted agreement to its terms. Sipprell Decl., Ex. A at 1. Lovig remained employed by Best Buy over five months beyond the effective date of the policy without raising any objection to it.[3] "Where an employee continues in his or her

---

[3] Notably, Lovig does not claim that he attempted to reject the Arbitration Policy any time prior to August 28, 2016—more than five months after the policy had gone into effect and

9

employment after being given notice of the changed terms or conditions, he or she has accepted those new terms or conditions." Davis, 755 F.3d at 1093. Lovig's continued employment expressed agreement to and acceptance of the Arbitration Policy, even if Lovig had not known that his actions constituted acceptance. Davis, 755 F.3d at 1094 (California does not "require that employees must be expressly told that continued employment constitutes acceptance"). Lovig's unexpressed intentions or understandings about the policy cannot negate his outward expression of assent to its terms.

### 2. Whether the Arbitration Policy is Valid and Enforceable

Plaintiff argues that the Arbitration Policy is unenforceable because it is illusory, defendants violated a covenant of good faith and fair dealing when implementing it, and it is unconscionable.

#### a. Whether It Is Illusory

"[I]f a promise is expressly made conditional on something that the parties know cannot occur, no real promise has been made. Similarly, one who states 'I promise to render a future performance, if I want to when the time arrives,' has made no promise at all. . . . Thus, an unqualified right to modify or terminate the contract is not enforceable. But the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice." Asmus, 23 Cal. 4th at 15–16 (finding a contract not illusory where "the promise was not optional with the employer and was fully enforceable until terminated or modified").

Plaintiff argues that defendants unilaterally imposed an arbitration policy that included an onerous retroactivity term. By doing so, the Arbitration Policy was illusory under the circumstances. Opp. at 5.

As in Asmus, 23 Cal. 4th at 15–16, the Arbitration Policy here is not illusory

---

at least eight months after he first had notice of it. The court does not express an opinion about whether Lovig's attempt to reject the Arbitration Policy would have been effective if made within a reasonable time following the notice.

10

because its terms are not optional with Best Buy, and both Best Buy and Lovig are bound to the policy so long as it is in force. Best Buy remains bound by the Arbitration Policy with respect to plaintiff unless the parties agree otherwise. Because Best Buy has not reserved for itself the unfettered right to terminate or modify the policy, it is not illusory.

### b. Whether It Violated the Covenant of Good Faith and Fair Dealing

"It has long been recognized in California that '[t]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000) (quoting Comunale v. Traders & General Ins. Co., 50 Cal. 2d 654, 658 (1958)).

Plaintiff argues that "defendants created an agreement and imposed retroactivity as a term. Such behavior is quintessentially unfair in that is modifies the existing employment arrangement between Plaintiff and Defendants in a manner wholly unfair, depriving Plaintiff of the prior rights he held." Opp. at 7.

Plaintiff's argument presumes that the Arbitration Policy modified the existing employment arrangement between the parties unfairly because it applies retroactively. First, plaintiff does not identify any terms of any prior employment arrangement. But this argument requires that the duty of good faith under a prior contract was breached by the Arbitration Policy. Plaintiff does not identify any terms of a prior contract that were frustrated by the Arbitration Policy.

Second, companies and employees can contract with each other to require arbitration. Such contracts are not required to be entered into on the date of an employee's hire. Here, the agreement was entered into sometime after Lovig began working for Best Buy. In those circumstances, such an agreement will necessarily change the parties' relationship. But not every such change violates the covenant of good faith and fair dealing of a prior contract. Parties can contract to arbitrate even past disputes. See, e.g., DeVries v. Experian Info. Sols., Inc., Case No. 16-cv-02953-WHO, 2017 WL 733096, at *8 (N.D. Cal. Feb. 24, 2017); In re Verisign, Inc., Derivative Litig.,

11

531 F. Supp. 2d 1173, 1223–24 (N.D. Cal. 2007).

### c. Whether It Is Unconscionable

Under California law, courts may refuse to enforce any contract found "to have been unconscionable at the time it was made" and may "limit the application of any unconscionable clause." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 340 (2011). "The party resisting arbitration bears the burden of proving unconscionability. Both procedural unconscionability and substantive unconscionability must be shown, but they need not be present in the same degree and are evaluated on a sliding scale. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Pinnacle Museum, 55 Cal. 4th at 247 (citations and internal quotation marks omitted).

"To determine whether the arbitration agreement is procedurally unconscionable the court must examine the manner in which the contract was negotiated and the circumstances of the parties at that time." Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1171 (9th Cir. 2003) (internal quotation marks omitted). "[P]rocedural unconscionability requires oppression or surprise. Oppression occurs where a contract involves lack of negotiation and meaningful choice[.]" Pinnacle Museum, 55 Cal. 4th at 247 (citations and internal quotation marks omitted). "A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract." Ingle, 328 F.3d at 1171. "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." Id.; Pinnacle Museum, 55 Cal. 4th at 247.

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to 'shock the conscience." Pinnacle Museum,

55 Cal. 4th at 246 (citations and internal quotation marks omitted). An arbitration agreement must call for arbitration that "meet[s] certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." Craig, 84 Cal. App. 4th at 422; accord Wherry v. Award, Inc., 192 Cal. App. 4th 1242, 1248 (2011) ("To be valid, at minimum the arbitration agreement must require a neutral arbitrator, sufficient discovery, and a written decision adequate enough to allow judicial review.").

Procedurally, the Arbitration Agreement was unconscionable. It was not negotiated—it was presented as take-it-or-leave-it. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 115 (2000) (employment contract procedurally unconscionable where it "was imposed on employees as a condition of employment and there was no opportunity to negotiate"). As such, it was oppressive because it involved lack of negotiation or meaningful choice. Moreover, it was oppressive because the parties had a stark disparity in bargaining power. The employee being told to accept or quit precluded any meaningful opportunity to negotiate the terms of the agreement.

Regarding surprise, there was no surprise. The terms of the agreement were not buried or hidden, and Best Buy brought them to plaintiff's attention repeatedly.

Substantively, the Arbitration Agreement is not unconscionable. Plaintiff argues, without citation to any authority, that any arbitration agreement that applies retroactively is substantively unconscionable. However, that position does not accord with California law. See, e.g., DeVries, 2017 WL 733096, at *8 ("Courts have also consistently applied arbitration agreements retroactively"); In re Verisign, Inc., Derivative Litig., 531 F. Supp. 2d at 1223–24 (N.D. Cal. 2007) (applying arbitration agreement retroactively). Plaintiff does not identify any other source of substantive unconscionability, nor can the court find any. See Craig, 84 Cal. App. 4th at 422 (arbitration requires "neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration").

Because plaintiff must show both procedural and substantive unconscionability—and he fails to do so—the agreement is not unconscionable, even when recognizing the procedural oppression and applying a sliding scale.

### 3. Whether the Claims at Issue Fall Within the Scope of the Agreement

The Arbitration Policy was effective March 15, 2016, by its own terms. Sipprell Decl. ¶ 4 & Ex. A at 1. The complaint asserts a relevant time period beginning four years prior to the filing of this action. FAC ¶ 13. Therefore, the current allegations concern time periods both before and after the Arbitration Policy was implemented. Defendants argue that the Arbitration Policy applies retroactively, prior to the date it was implemented. Plaintiff argues that the court should reject the retroactivity term, as it would destroy plaintiff's rights in claims that had already accrued.

"[W]hen examining the scope of an arbitration agreement, as with any other contract dispute, we first look to the express terms of the parties' agreement. If the text is plain and unambiguous, that is the end of our analysis in this case because we must rigorously enforce arbitration agreements according to their terms[.]" United States ex rel. Welch v. My Left Foot Children's Therapy, LLC, 871 F.3d 791, 796 (9th Cir. 2017) (internal quotation marks and citations omitted). That includes language applying arbitration agreements retroactively, to cover disputes arising prior to the agreement itself. In re Verisign, Inc., Derivative Litig., 531 F. Supp. 2d at 1223–24; DeVries, 2017 WL 733096, at *8 ("Courts have also consistently applied arbitration agreements retroactively where the agreements . . . facially apply to disputes arising prior to the agreement."); cf. Castro v. ABM Indus., Inc., Case No. 17-cv-3026-YGR, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) (arbitration clause applying to "all Covered Claims, *whenever they arise*" facially applied only to present and future, but not past, conduct). Doubts or ambiguities must be resolved in favor of arbitration. Moses H. Cone Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25.

Here, the Arbitration Policy unambiguously applies to "past, present or future Claims between an Employee/former Employee or applicant and Best Buy, that arise out

1  of or relate in any way to the applicant's or Employee's employment application,
2  employment and/or termination of employment with Best Buy[.]"  Sipprell Decl., Ex. A at
3  2.  Elsewhere, the policy states that it "requires that . . . Employees bring in arbitration,
4  rather than in court, any past, present or future claims, disputes, or lawsuits[.]"  Id. at 1.
5  The terms are clear on their face, and the Arbitration Policy applies retroactively.

### B.  Whether to Dismiss Plaintiff's Class Claims

Defendants ask the court to dismiss plaintiff's class claims, arguing that the Arbitration Policy contains a class and collective action waiver.  Mot. at 12–13.  Although the Arbitration Policy requires disputes about what is arbitrable to be decided in arbitration, that requirement "does not apply to the class and collective action waiver and/or representative action waiver."  Sipprell Decl., Ex. A at 6.  Plaintiff's sole objection to defendants' motion to dismiss class claims is that it "depends upon the request to compel arbitration" and "must be denied when the motion to compel arbitration is denied."  Opp. at 11.  As the motion to compel arbitration is granted, plaintiff raises no viable objection to defendants' motion to dismiss class claims.

Because plaintiff agreed to arbitrate any and all non-PAGA claims on an individual basis only (Sipprell Decl., Ex. A at 4–5), plaintiff's class claims are DISMISSED WITH PREJUDICE.

### C.  Whether to Stay Proceedings Before this Court

#### 1.  Arbitrable Claims

Title 9 U.S.C. § 3 provides that "the court . . . upon being satisfied that the issue . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]"  That provision requires that plaintiff's arbitrable claims be stayed during arbitration.  Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1057 (9th Cir. 2013); 9 U.S.C. § 3.  Because the Arbitration Agreement is valid, and the dispute falls within its terms, the court must stay further proceedings of the arbitrable claims pending arbitration.  Kilgore, 718 F.3d at 1057 (9 U.S.C. § 3 "require[es] stay of civil action during arbitration").

15

## 2. PAGA Claim

A court may stay proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Use of this power "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Id. at 254–55; see also Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983) ("the district court did not abuse its discretion by staying the action pending receipt of the results of arbitration").

In determining whether it should exercise its discretion to grant a stay, the court should consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254–55).

Taking the above considerations into account, the court finds that it is appropriate to stay plaintiff's PAGA claim. See, e.g., McGill v. Citibank, 2 Cal. 5th 945, 966 (2017) ("case law establishes that a stay of proceedings as to any inarbitrable claims is appropriate until arbitration of any arbitrable claims is concluded"); Franco v. Arakelian Enterprises, Inc., 234 Cal. App. 4th 947, 966 (2015) (compelling arbitration and staying PAGA claims pending arbitration); Shepardson v. Adecco USA, Inc., Case No. 15-cv-05102-EMC, 2016 WL 1322994, at *6 (N.D. Cal. Apr. 5, 2016) (staying PAGA claim pending the outcome of arbitration of the plaintiff's individual Labor Code claims); Cobarruviaz v. Maplebear, Inc., 143 F. Supp. 3d 930, 947 (N.D. Cal. 2015) (staying PAGA claim pending outcome of arbitration of the plaintiff's individual claims); Jacobson v. Snap-on Tools Co., Case No. 15-cv-02141-JD, 2015 WL 8293164, at *6 (N.D. Cal. Dec. 9, 2015) (same).

## CONCLUSION

For the foregoing reasons, plaintiff is hereby COMPELLED TO ARBITRATE ON

1  AN INDIVIDUAL BASIS claims one through six of his First Amended Complaint for failure
2  to provide meal periods; failure to provide rest periods; failure to pay hourly wages; failure
3  to provide accurate written wage statements; failure to timely pay all final wages; and
4  unfair competition.  The entire action is hereby STAYED pending resolution of the
5  arbitration.  Plaintiff's class claims are hereby DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated:  August 28, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge